**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-001332-DME-CBS

GENERAL STEEL DOMESTIC SALES, LLC, a Colorado limited liability company,

      Plaintiff,

v.

RISING SUN MISSIONARY BAPTIST CHURCH, INC.,

      Defendant.

---

## ORDER COMPELLING ARBITRATION

---

    This matter comes before the Court on Plaintiff General Steel Domestic Sales, LLC ("General Steel")'s motion, made pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-307, to compel arbitration and for a stay, see 9 U.S.C. §§ 3, 4 (Doc. 1).  For the following reasons, the Court GRANTS that motion.

### I. Background

    The parties do not dispute the following:  Defendant Rising Sun Missionary Baptist Church, Inc. ("the Church") entered into a written contract with General Steel to purchase a pre-engineered steel building.  As part of that arrangement, the Church paid General Steel two deposits totaling $73,493.  The Church sued General Steel in Arkansas state court seeking to recover those deposits.  The sales agreement between the parties, however, provided that "[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof, shall be resolved by arbitration before the Judicial Arbiter Group, Inc. in Denver, Colorado. . . .  The [FAA] shall govern the interpretation,

enforcement, and proceedings pursuant to this arbitration agreement." (Doc. 2-1 at 2.) Based upon this provision, General Steel initiated this federal action seeking to compel arbitration.

## II.  Subject-matter jurisdiction

Although the FAA permits a party to petition a federal court to enforce an arbitration agreement, see 9 U.S.C. § 4, the FAA does not itself provide federal courts with subject-matter jurisdiction over such a proceeding.  See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 n.32 (1983).  Therefore, there must be an independent basis for subject-matter jurisdiction.  See id.

Here, General Steel invokes this Court's diversity jurisdiction, see 28 U.S.C. § 1332(a)(1).  The parties do not dispute that they are diverse.  General Steel is a citizen of Colorado, while the Church is a citizen of Arkansas.  But the Church contends there is not at least $75,000 in dispute, as § 1332(a) requires for diversity jurisdiction.

In determining the amount in controversy in this proceeding to compel arbitration, the Court "looks through to the possible award resulting from the desired arbitration." Woodmen of the World Life Ins. Soc'y v. Manganaro, 342 F.3d 1213, 1217 (10th Cir. 2003) (internal quotation marks omitted).  As the party seeking to invoke this Court's jurisdiction, General Steel has the burden to "show that it does not appear to a legal certainty" that neither party can recover at least $75,000 in the requested arbitration.  Id. at 1216 (internal quotation marks omitted).  General Steel has met its burden.

General Steel seeks to compel the Church to arbitrate the dispute at issue in the Church's Arkansas state-court litigation.  In that case, the Church seeks to recover the

2

$73,493 in deposits it paid to General Steel.  One of the Church's theories of recovery is that General Steel violated the Arkansas Deceptive Trade Practices Act.  That Arkansas statute permits a civil litigant to recover reasonable attorney's fees, in addition to actual damages.  <u>See</u> Ark. Code § 4-88-113(f).  Attorney's fees available by statute may be used to calculate the amount in controversy for purposes of determining diversity jurisdiction.  <u>See</u> <u>Miera v. Dairyland Ins. Co.</u>, 143 F.3d 1337, 1340 (10th Cir. 1998).  Even though the Church did not expressly request an award of attorney's fees in its state-court complaint, such an award is available.  And the Court cannot say, with legal certainty, that an arbitration award that included reasonable attorney's fees, in addition to the requested $73,493 in damages, would not exceed the $75,000 jurisdictional threshold.  Thus, General Steel has shown that it is not a legal certainty that the arbitration requested here will not involve an award of less than $75,000.  This Court, therefore, has subject-matter jurisdiction to consider General Steel's motion to compel arbitration.

### III.  Motion to compel arbitration

General Steel seeks to compel the Church to arbitrate the parties' dispute over the return of the deposits.  "A party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition [this Court] . . . for an order directing that such arbitration proceed in the manner provided in such agreement."  9 U.S.C. § 4.  The Church does not dispute that its written sales contract with General Steel provided that the parties would arbitrate disputes arising under that contract.[1]  But

---

[1] The arbitration clause in the parties' sales agreement provided the following:

the Church argues that the arbitration provision is unenforceable because it is

unconscionable.  See 9 U.S.C. § 2 (noting that an agreement to arbitrate governed by

the FAA "shall be valid, irrevocable, and enforceable, save upon such grounds as exist

at law or in equity for the revocation of any contract"); see also AT&T Mobility LLC v.

Concepcion, 131 S. Ct. 1740, 1745-48 (2011) (noting arbitration agreements may be

invalidated by generally applicable contract defenses, so long as those defenses are not

applied to disfavor arbitration).  The parties do not dispute that this Court can decide the

question of whether the arbitration provision is unconscionable, see Rent-A-Center, W.,

Inc. v. Jackson, 130 S. Ct. 2772, 2775, 2777-79 (2010), and that Colorado law governs

---

> Seller has a sincere desire to perform its obligations under this contract. Both parties agree to try to resolve any dispute, in good faith, before initiating any dispute resolution process.  Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be resolved by arbitration before the Judicial Arbiter Group, Inc. in Denver, Colorado. The parties have agreed that all questions of arbitrability, including the validity and scope of the arbitration agreement, are reserved for arbitral rather than court determination.   Arbitration of any controversy, and confirmation of any arbitration award shall be only in Denver, Colorado. The party initiating arbitration shall advance all costs thereof.   This agreement shall be governed by and interpreted in accordance with the laws of the State of Colorado.  The Federal Arbitration Act shall govern the interpretation, enforcement, and proceedings pursuant to this arbitration agreement.   The arbitrator will have no authority to award punitive, consequential or other purely non-compensatory damages, except as may be required by statute.  Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.  In addition to any other liability Buyer may have to Seller, Buyer agrees to pay to Seller all legal and other expenses incurred by Seller in collecting any amounts due from Buyer or incurred in any other dispute relating to this agreement.  Any past due amounts shall accrue interest at a rate of 1 1/2% per month.

(Doc. 2-1 ¶ 6.)

the issue.  The Church bears the burden of establishing that the parties' arbitration

provision is unconscionable.  See Vernon v. Qwest Commc'ns Int'l,

Inc., --- F.Supp.2d ---, 2012 WL 768125, at *18-*19 (D. Colo. Mar. 8, 2012).

> Under Colorado law,
>
> [i]n order to support a finding of unconscionability, there must be evidence of some overreaching on the part of one of the parties such as that which results from an inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party.

Davis v. M.L.G. Corp., 712 P.2d 985, 991 (Colo. 1986).  Davis set forth the following

seven factors, addressing both procedural and substantive unconscionability, which a

court should consider in deciding whether a contract provision is unconscionable and,

thus, unenforceable.  See id.; see also Bailey v. Lincoln Gen. Ins. Co., 255 P.3d 1039,

1055 n.9 (Colo. 2011).

### A.  Standardized agreement executed by parties of unequal bargaining strength.

This factor weighs in favor of enforcing the arbitration provision.  The sales

contract containing the parties' arbitration agreement was a standardized one.  But that

alone is not dispositive.  See Adams Reload Co. v. Int'l Profit Assocs., Inc., 143 P.3d

1056, 1061 (Colo. Ct. App. 2005); Bonanno v. Quizno's Franchise Co., No. 06-cv-

02358-CMA-KLM, 2009 WL 1068744, at *18 (D. Colo. Apr. 20, 2009) (unreported).

The Church contends that the parties' standardized sales agreement was

between parties with "gross[ly]" unequal bargaining power because General Steel is a

"national advertiser," while it is "a small church."  (Doc. 6-1 at 24, 26.)  There was some

inequality in the bargaining positions of these parties, but the Church has not established that there was a "gross" inequality.  Nor did this transaction involve the absence of meaningful choice because there is no suggestion that the Church had to buy a pre-engineered building and that it had to buy the building from General Steel.  See Davis, 712 P.2d at 991 (indicating this factor should be considered); Bonanno, 2009 WL 1068744, at *18 (considering this factor).

### B.  Lack of opportunity for the Church to read or become familiar with the agreement before signing it

This factor also weighs in favor of enforcing the arbitration provision.  The Church contends that General Steel rushed the Church's representative into signing the sales contract, without providing the Church with an opportunity to read the arbitration provision.  But the undisputed facts do not support this contention.

According to the Church, after hearing a radio advertisement, its representative contacted General Steel "in February 2008" about buying a building.  (Doc. 2-6 ¶ 4.)  As early as February 1, 2008, the parties were exchanging emails and telephone calls regarding a possible purchase.  The Church indicates that, during this time period, "General Steel represented to the church that it was currently offering a substantial discount below its ordinary prices, but to qualify for the discount the down payment would have to be made quickly."  (Doc. 6-1 at 3-4.)  General Steel sent the Church an offer on February 15, 2008, which indicated that the Church had to sign the agreement and pay a deposit on that day in order to lock in the discounted price.  Yet the Church's representative did not execute the sales agreement until February 17, 2008, and the

6

Church did not pay the $43,493 deposit until February 20, 2008.  And the Church still received the discounted price.

Having had the opportunity to discuss this purchase with General Steel for more than two weeks, and after having the written agreement for several days before signing it, the Church had a reasonable opportunity to review the agreement's arbitration clause.  See Vernon, 2012 WL 768125, at *20; see also Mullan v. Quickie Aircraft Corp., 797 F.2d 845, 852 (10th Cir. 1986) (applying Colorado law).  The fact that the Church might have lost a discount on the price of the building if it did not agree to the sales contract, with its arbitration agreement, within a specific time frame does not, alone, make the arbitration provision unconscionable.  See Axis Venture Grp., LLC v. 1111 Tower, LLC, No. 09-cv-01636-PAB-KMT, 2010 WL 1278306, at *1, *4 (D. Colo. Mar. 30, 2010) (unreported) (enforcing arbitration provision incorporated by reference into condominium sales agreement against purchaser because purchaser had access to the arbitration provision before signing the sales agreement, even though purchaser claimed that he was unable to read the sales agreement because "it was executed late in the last day before preferential pricing offered by defendants would expire").

### C.  Use of fine print to set forth the arbitration provision

This factor, too, supports enforcing the arbitration provision.  The Church claims that General Steel buried the arbitration clause in the sales contract's fine print.[2]  But a review of the record does not support that claim either.

---

[2] The Church also argues that General Steel buried a provision in the sales contract's fine print "that disguises the fact that the church was going to have extensive additional costs related to the purchase of the building."  (Doc. 6-1 at 24.)  But that provision is not

7

Although the first page of the sales contract is in fairly small print, the arbitration provision is on the second page of the two-page agreement.  And all of the provisions on that second page are in the same-sized font, which is noticeably larger than the font used on the first page.  See Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc., No. 06-cv-01212-WYD-BNB, 2007 WL 4268962, at *7 (D. Colo. Nov. 30, 2007) (unreported) (rejecting argument that provision was inconspicuous in agreement's fine print where it "was in normal print consistent with other clauses in the contract"). Moreover, the Church's representative initialed the arbitration provision, as well as the other six provisions set forth on the second page, when he executed the sales contract. There is no evidence, then, that the Church was unaware of the arbitration provision or that the Church objected to it.  See Adams Reload Co., 143 P.3d at 1061 (considering these factors).

### D.  Absence of evidence that the arbitration provision was commercially reasonable or should reasonably have been anticipated

This factor weighs in favor of enforcing the arbitration provision.  The Church makes no specific argument regarding this factor.  But including an arbitration provision in a sales contract is generally commercially reasonable, see Bonanno, 2009 WL 1068744, at *19-*20 (noting challenged provision served commercial purpose of its drafter), and thus not so far outside the mainstream as to be unanticipated, see Bernal v. Burnett, 793 F. Supp. 2d 1280, 1288 (D. Colo. 2011).

---

relevant here to the question of whether the arbitration provision is unconscionable. See Bonanno, 2009 WL 1068744, at *22.

**E.  Terms of the arbitration provision, including substantive unfairness of those terms**

"[T]here is nothing inherently unfair about an agreement to arbitrate."  Bernal, 793 F. Supp.2d at 1288.  Nevertheless, the Church argues that four specific provisions of the arbitration clause at issue here were "extremely one-sided" and substantively unfair.[3]

First, the Church challenges the arbitration provision's requirement that arbitration take place in Colorado.  While that provision does favor General Steel, it is not substantively unfair.  Cf. Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 977-78, 980 (2d Cir. 1996) (applying Connecticut law and enforcing provision requiring Illinois franchisees to arbitrate in either Florida or Connecticut).

Second, the Church challenges the arbitration provision's limiting the remedies available to both parties: "The arbitrator will have no authority to award punitive, consequential or other purely non-compensatory damages, except those provided by statute" (Doc. 2-1 at 2 ¶ 6).  This provision is also not substantively unfair.  Colorado law recognizes, for example, that parties to sales contracts involving movable goods can limit or exclude recovery of consequential damages, so long as that contract provision is

---

[3] The Church also challenges the substantive unfairness of the sales contract's terms making any deposits non-refundable, asserting such a provision is an unlawful penalty. That argument, however, is not pertinent to the question at hand - whether the arbitration provision is unconscionable.  See Bonanno, 2009 WL 1068744, at *22.

not unconscionable.  See Colo. Rev. Stat. § 4-2-719(b)(3).  And the limitation of remedies at issue here applies to both General Steel and the Church.[4]

Third, the Church contends that the part of the arbitration clause requiring that "[t]he party initiating arbitration shall advance all costs thereof" is substantively unfair because it will always be the purchaser who must initiate arbitration in order to recover its down payments.  (Doc. 2-1 at 2 ¶ 6.)  But it is not clear that the only dispute among the parties arising from the sales contract will be over the return of deposits paid by the purchaser.  And even in this case, which does involve the purchaser's claims to recover down payments, it is General Steel, and not the Church, who is attempting to initiate arbitration.

The Church further asserts that the amount of costs it might incur because of arbitration makes the agreement to arbitrate unconscionable.  In support of this claim, the Church notes that the arbitrators who work for the Judicial Arbiter Group designated by the sales contract to conduct arbitration charge $360 per hour, there is a required "down payment of $4,000.00 per day" for the arbitration, and "[w]ith the cost of travel and lodging for the church's two witnesses and attorney, the cost of arbitration would likely exceed $15,000.00."  (Doc. 6-1 at 24.)  The Court cannot conclude that, in the abstract, the possibility of expending $15,000 in order to recover over $73,000, plus possibly reasonable attorney's fees, is so prohibitive as to warrant concluding that the cost of arbitrating, instead of litigating, makes the arbitration provision unconscionable.

---

[4] Generally, a party asserting a contract dispute cannot recover punitive or non-compensatory damages.  A party could recover consequential damages if those damages are foreseeable.

See Rains v. Found. Health Sys. Life & Health, 23 P.3d 1249, 1253-54 (Colo. Ct. App. 2001) (applying federal arbitration principles to Colorado's arbitration act).  And the Church has not attempted to compare the costs it might incur through litigation with those it might incur as a result of arbitration.

Fourth, the Church challenges the portion of the arbitration clause that provides that, "in addition to any other liability [the Church] may have to [General Steel], [the Church] agrees to pay [General Steel] all legal and other expenses incurred by [General Steel] in collecting any amounts due from [the Church] or incurred in any other dispute relating to this agreement" (Doc. 2-6 at 2 ¶ 6 (emphasis added)).  This language arguably requires the Church ultimately to pay General Steel for "all legal and other expenses" it incurs from any dispute resulting from the sales contract, regardless of which party prevails in that dispute.  While Colorado law does not require that each contractual obligation be mutual, so long as each party provides some consideration for the contract, see Butler v. Lembeck, 182 P.3d 1185, 1190 (Colo. Ct. App. 2007); Rains, 23 P.3d at 1255, if this provision is interpreted in this way it might be substantively unfair because it would require the Church to pay General Steel's expenses and costs, whether or not the Church prevails.  However, this interpretation is not required by the language of the arbitration clause and the arbitrator might decide to interpret it more narrowly.

This Davis factor, then, may slightly disfavor arbitration but this factor will not be dispositive because at this point both the interpretation of the clause and its application are uncertain and even speculative.

11

**F.  The relationship between the parties, including factors of assent, unfair surprise or notice**

The Church does not specifically address this factor.  The parties appear to have had a relationship for just over two weeks prior to the Church's agreeing to buy the building from General Steel, and agreeing to arbitrate disputes arising from the parties' sales agreement.  See Bonanno, 2009 WL 1068744, at *18 (noting fact that parties did not have a prior relationship weighed in favor of enforcing challenged agreement because "Plaintiffs were not faced with the Faustian decision of terminating their pre-existing contract or accepting a newly-added" provision).  And the transaction at issue here involved a significant amount of money.  See id. at *22 (noting that, where there is a significant amount of money involved, "one would expect that plaintiffs entering into such a relationship would do so with a bit more cognizance than a teenager purchasing a phone at the mall").

Further, as previously discussed, the Church was aware, and had notice, of the arbitration provision in the sales contract, as evidenced by the Church's representative affirmatively assenting to that provision by initialing it at the time he signed the sales contract.  And, although General Steel probably had a superior bargaining position, see id., there is no indication that the Church was compelled to purchase a building, or that it had to purchase it from General Steel.

Thus, the "substantive unfairness" factor favors upholding arbitration in this case.

**G.  All other circumstances surrounding the formation of the agreement to arbitrate, including its commercial setting, purpose and effect**

In arguing the arbitration provision is unconscionable, the Church points out that the State of Colorado previously sued General Steel, resulting in a consent decree approved by a Colorado state court proscribing General Steel's use of deceptive business practices.  The Church further argues that General Steel persists in those deceptive practices and that the arbitration clause is a key component to General Steel's scheme.  But the standardized sales contract at issue here, including its arbitration provision, was the product of that consent decree and was approved by the Colorado state court.  This factor, then, also weighs in favor of enforcing the arbitration agreement.  See Bonanno, 2009 WL 1068744, at *22 (rejecting argument that "fraudulent . . . sales pitch" infected enforceability of arbitration provision).

### H.  Weight of Davis factors supports enforcing the arbitration provision

Under Colorado law, in determining whether a contract provision is unconscionable, "no one [Davis] factor predominates and courts should examine each of the factors in conjunction with the entirety of the circumstances surrounding the transaction."  Bonanno, 2009 WL 1068744, at *18.  "If the entirety of the circumstances discloses evidence of 'overreaching' by one party that causes a contract provision to unreasonably favor that party to the detriment of the other party, a court should decline to enforce the provision."  Id.

Here, the Davis factors, considered in light of the circumstances surrounding the transaction at issue here, weigh in favor of enforcing most of the arbitration provision. The factors addressing procedural unconscionability all weigh in favor of enforcement.

13

The Church has also not convincingly established that the arbitration provision is substantively unconscionable, with the possible (and at this point hypothetical) exception of the portion of the arbitration provision requiring the Church to pay all of General Steel's costs and expenses incurred as a result of this dispute.  The provisions of the arbitration clause are not so one-sided or out-of-the-norm to be considered substantively unreasonable.  Therefore, the Court concludes the arbitration agreement is enforceable.  The Court thus GRANTS General Steel's motion to compel arbitration pursuant to the parties' agreement.

## IV.  Motion to stay Arkansas state-court proceedings

In addition to moving to compel arbitration, General Steel also seeks an ordering staying the ongoing Arkansas state-court litigation between these parties.  The Court has authority to grant such a stay under 28 U.S.C. § 2283.  See McGuire, Cornwell & Blakely v. Grider, 765 F. Supp. 1048, 1052 (D. Colo. 1991).  And the Church does not specifically oppose such a stay.  Therefore, the Court GRANTS General Steel's motion to stay the Arkansas litigation.

## V.  Motion to stay these proceedings

Pursuant to 9 U.S.C. § 3, General Steel also seeks to stay these federal proceedings pending arbitration.  The Church does not specifically oppose such a stay, either.  The Court, therefore, GRANTS that motion as well.

## VI.  Conclusion

For the foregoing reasons, the Court ORDERS the following:

The parties are to arbitrate their dispute according to their arbitration agreement.

14

The Arkansas state action involving these parties, <u>Rising Sun Missionary Baptist</u> <u>Church v. General Steel Domestic Sales, L.L.C.</u>, No. CV 2011-84-2, pending in the Circuit Court of St. Francis County, Arkansas, is stayed pending the parties' arbitration of their dispute.

This federal litigation is also stayed until conclusion of the arbitration proceedings.  The Court will retain jurisdiction over this case but, pursuant to D.C.COLO.LCivR Rule 41.2, the case will be administratively closed, subject to reopening upon a showing of good cause, which could include completion of the arbitration proceedings or for any other proper purpose.

The parties are to notify this Court within ten days after the arbitration award is issued.  And, in the interim, the parties are to file status reports every six months with both this court and the Arkansas state court in which the parties' litigation is pending, beginning on January 2, 2013, and every six months thereafter.

Pursuant to its request in the motion to compel arbitration, General Steel may file a proper motion for attorney's fees with this Court within fourteen days of the date of this order.

Dated this ___17th___ day of _____May___, 2012.

BY THE COURT:

*s/ David M. Ebel*

U. S. CIRCUIT COURT JUDGE
DISTRICT OF COLORADO

15